**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 18 2013, 6:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRANK TILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1211-CR-571 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1105-MR-31929

**June 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Frank Tiller appeals his conviction for murder, a felony, following a jury trial. Tiller raises a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

**FACTS AND PROCEDURAL HISTORY**

For several days preceding September 3, 1999, Gordon Slaughter dealt cocaine and crack cocaine out of the home of Barbara Perkins at 206 North Sheffield Avenue in Indianapolis. Allen White and three associates were regular customers of Slaughter, coming and going numerous times and spending hours each time over those days. Slaughter recognized White's associates as White's wife, Jamie, Barbara Hatfield, and another male. At the time, Hatfield was dating Tiller, who lived about a half-mile from the 200 block of North Sheffield Avenue.

On September 3, White ran out of money to buy Slaughter's drugs. White then asked to borrow Slaughter's gun, but Slaughter refused. White and his three associates then left, with White telling Slaughter that they would be back. It was "early that morning." Transcript at 285.

Around 7:30 a.m., Henry Day left his home at 226 North Sheffield Avenue for work. On his way, he passed by the home of Victor Gregg at 225 North Sheffield. Gregg was eighty-three years old and a World War II veteran. As Day drove past, he saw an uninjured Gregg picking up trash outside Gregg's house.

Shortly thereafter, Angela Harris also drove past Gregg's home while taking her daughter and two nieces to school. Harris observed Gregg lying in his garage with

2

"blood all over his head." Id. at 161. Harris called 9-1-1, and the first officer arrived at Gregg's residence at 7:52 a.m.

About "ten or 15 minutes" after White and his associates left Perkins' residence, they returned with money to buy more drugs from Slaughter. The money they handed Slaughter "had blood on it," and White "had blood on his hands." Id. at 287. Slaughter "wasn't paying [the other male with White] no attention. [White] was my main focus because [White] was . . . the guy." Id. at 290. Immediately thereafter, Slaughter and the others "hear[d] a lot of sirens, we hear[d] sirens everywhere." Id. at 288. White ordered everyone to stay inside Perkins' residence until the police had left.

Gregg died at a nearby hospital later that day. His cause of death was blunt force trauma to the head and strangulation. Officers collected Gregg's blood-stained clothes and keychain, among other things. But the State did not have any witnesses or other clear leads for another eleven years.

In 2008, pursuant to a federal grant, the Indianapolis Metropolitan Police Department ("IMPD") established its Cold Case Division to attempt to solve older crimes through the use of DNA evidence. In September of 2010, IMPD detectives learned that DNA recovered from Gregg's clothing and keychain was a match for both Gregg and Tiller. IMPD Detective David Ellison obtained a warrant to collect a sample of DNA from Tiller, which Detective Ellison then sent for further testing. Further testing confirmed the initial DNA analysis that Gregg's and Tiller's DNA were present in the blood stains on Gregg's clothes and keychain.

On May 6, 2011, the State charged Tiller with murder. Following a trial in October of 2012, the jury found Tiller guilty. The trial court entered its judgment of conviction and sentenced Tiller accordingly. This appeal ensued.

**DISCUSSION AND DECISION**

Tiller appeals his conviction for murder and asserts that the State failed to produce evidence sufficient to support his conviction, specifically, his identity. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. In order to prove murder, the State was required to show beyond a reasonable doubt that Tiller knowingly or intentionally killed Gregg. See Ind. Code § 35-42-1-1.

On appeal, Tiller asserts only that the State failed to show that he was the person who killed Gregg. In particular, Tiller asserts that his DNA in the blood on Gregg's clothes and keychain "only supports mere presence and a reasonable theory of innocence." Appellant's Br. at 8. Tiller also asserts that the State's attempt to link him to White "is speculation." Id. at 14. We cannot agree.

While the State's case against Tiller was based on circumstantial evidence, a defendant's identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Holloway v. State, 983 N.E.2d 1175, 1178 (Ind. Ct.

4

App. 2013). Here, the State's evidence showed that Tiller was dating Hatfield, and that Hatfield and a man unknown to Slaughter frequently visited with Slaughter at Perkins' house. On the morning of September 3, 1999, White and his companions left Perkins' house to obtain money for drugs, and they returned a short time later with money covered in blood. At the same time, police arrived at Gregg's nearby residence following Harris' 9-1-1 call. In 2010, the State learned that Tiller's DNA matched the blood evidence on Gregg's clothing, which was consistent with the violent manner of Gregg's death. Given the blood stain evidence and the close proximity in time and location, a reasonable trier of fact could conclude Tiller was guilty beyond a reasonable doubt. Tiller's arguments to the contrary amount to requests for this court to reweigh the evidence, which we will not do. We affirm Tiller's conviction for murder.

Affirmed.

BAILEY, J., and BARNES, J., concur.